**SO ORDERED.**

**SIGNED this 23rd day of April, 2014.**




Robert E. Nugent
United States Chief Bankruptcy Judge

DESIGNATED FOR ONLINE PUBLICATION
BUT NOT PRINT PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CHARLOTTE ANN REASOR,** | ) | Case No. 13-12494 |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | |

**Order (1) Confirming Chapter 13 Plan; (2) Denying Motion to
Assume/Reject Executory Contract as Moot; (3) Granting Motion
for Relief from Stay; and (4) Denying Motion for Turnover or
<u>Adequate Protection as Moot</u>**

What happens when a chapter 13 debtor doesn't assume or reject an executory contract concerning personal property before confirmation? In this case, Charlotte Reasor proposed to treat her agreement to purchase a travel trailer from the Priesters as an unperfected secured transaction and paying the sellers an unsecured claim pro

1

rata. But I agree with the sellers that this agreement is an executory contract because there remain obligations due on both sides and failing to honor them would be a material breach.[1] In chapter 13, executory contracts that are unacted upon pass through the case and remain enforceable on their terms. Ms. Reasor's plan may be confirmed, but the stay should be lifted to allow the sellers to enforce their agreement. Their motions to assume or reject and for turnover of the trailer are moot.

Issues

The debtor filed her amended chapter 13 plan on December 17, 2013; the Priesters objected.[2] In addition, they filed two motions, one seeking stay relief or the assumption or rejection of the trailer contract;[3] and the other seeking the trailer's turnover or the payment of adequate protection.[4] The Court held an evidentiary hearing on confirmation and these motions on February 18, 2014.[5]

Facts

In October of 2008 while residing in Texas, Randy and Charlotte Reasor signed an agreement to purchase Howard and Joslyn Priester's 1998 Teton travel trailer (the

---

[1] *Olah v. Baird (In re Baird),* 567 F.3d 1207, 1211 (10th Cir. 2009) (clarifying *In re Myers,* 362 F.3d 667 (10th Cir. 2004) and adopting Countryman test of an executory contract).
[2] Dkt. 27, 36.
[3] Dkt. 14.
[4] Dkt. 34.
[5] The debtor Charlotte Reasor appeared by her attorney David Lund. Howard and Joslyn Priester appeared by their attorney J. Michael Lehman. Karin Amyx appeared for the chapter 13 trustee, Laurie B. Williams.

2

"Agreement").[6] The four were friends, previously meeting when Randy and Howard worked together as contract aircraft engineers in Alabama. Because theirs is a transient occupation, some contract engineers often keep a travel trailer that can be moved from one work venue to the next as an alternative to renting or buying homes for short periods of time. When Randy mentioned an interest in buying a trailer, Howard offered to sell him his–the 1998 Teton unit that is the subject of this order. Howard and Joslyn downloaded a form agreement from the internet, plugged in the parties' names and terms and everyone signed it.

The Agreement is titled "Purchase of Recreational Vehicle." It describes the trailer as a 1998 Teton Prestige "Denver" model and stipulates that the purchase price will be $36,831. The Reasors were to make an initial payment of $2,000, followed by 56 monthly payments of $789 plus another monthly payment of $33.74 to reimburse the Priesters for the insurance they agreed to maintain on the trailer.[7] The Agreement does not mention "security" or collateral to secure the Reasors' payments. Nor does the Agreement contain any provisions allocating to either party the risk of loss or responsibility for taxes, repairs and maintenance.[8] No other documents regarding the purchase transaction were introduced. The 56-month term of the

---

[6] Ex. 1.
[7] These terms are listed in a paragraph under the words "terms to include" which suggests that this document might not have included all of the terms of the parties' understanding, but both Howard Priester and Charlotte Reasor testified that there were no other terms.
[8] Likewise, neither party to the Agreement testified concerning the allocation of these obligations.

3

Agreement expired in June of 2013, well before this case was filed. The Priesters bought the trailer in 1998 with a purchase-money loan from USAA Federal Savings Bank, secured by a purchase money security interest recorded on the trailer's Texas certificate of title.[9]

After both Howard and Randy were laid off from their Texas jobs in 2009, the Reasors moved to Oklahoma and Howard towed the trailer there for them. Then in 2010, Randy was diagnosed with cancer. According to the payment record filed with the Priesters' amended proof of claim in the amount of $16,699, the Reasors missed five (5) payments during 2009, 2010, and 2011.[10] Then, in 2012, they missed at least 7 monthly payments. They have only made one monthly payment since July of 2012 and have never made any of the monthly insurance payments. The Priesters paid off their note at USAA in August of 2012 and USAA released its lien on the face of the certificate of title which remains in their possession.[11] The Priesters have continuously insured the trailer since its purchase in 1998. The Reasors moved to Clearwater, Kansas in August of 2013 where they currently live in the trailer on real estate owned by their son. The Priestors settled in Georgia where they resided at the time of trial.

The Court received a good deal of evidence about the maintenance and condition of the trailer. As Randy's fortunes waned, so did the trailer's. When the

---

[9] Ex. 2.
[10] Claim 3-2. *See also* Ex. 3.
[11] Ex. 2.

4

Priesters got an appraisal of the trailer preparing to pursue their claims here, they discovered that the trailer has roof and water damage. When they made an insurance claim for that damage, their insurer, another USAA entity, denied the claim stating that the damage was ordinary wear and tear that resulted from a failure to maintain the sealants on the roof.

Disability precludes Randy Reasor from working – he receives social security and retirement income. Charlotte Reasor presently works part-time as a nanny for a local attorney. Charlotte filed this chapter 13 case on September 26, 2013. Her proposed amended chapter 13 plan offers 3 payments of $720 and 57 payments of $200, or a total of $13,560.[12] In the plan, she proposes to pay the Priesters as unsecured creditors. She values the trailer at $10,000 and states that the debt owed the Priesters is $4,000 instead of the $16,699 asserted by the Priesters in their proof of claim. There is no reference to the Agreement in the "Executory Contract" section of the plan.[13]

Both parties offered the testimony and written reports of appraisers in support of their views of the value of the trailer. As discussed below, because I conclude that this Agreement is an executory contract and not a secured transaction, the value of the trailer does not bear on the issues before me.

---

[12] Dkt. 27.
[13] Charlotte listed the trailer in her bankruptcy Schedule B, claimed it exempt under Oklahoma law on Schedule C, and scheduled the Priesters' claim as an unsecured claim on Schedule F. The Agreement was not listed in Schedule G.

5

Analysis

This Agreement isn't a secured transaction, nor does it appear that the parties intended it to be. Though the debtor's plan speaks in terms of the Priesters having an unperfected security interest, in fact they have *no* security interest in the trailer. They own it. KAN. STAT. ANN. § 84-9-203(b) (2013 Supp.) sets out the elements of an enforceable security interest: value must be given, the debtor must have rights in the collateral, and in the case of this type of collateral, there must be an "authenticated" agreement.[14] While the Priesters have given value and the Reasors arguably have rights in the trailer, there is no security agreement per se, rendering any alleged security interest nonexistent and unenforceable. Nothing in the Agreement evidences any intent to create a security interest in the trailer to secure the Reasors' performance or payment under the Agreement.[15] And neither party testified that they intended to create a security interest.

To determine whether a contract is an executory one, courts in the Tenth Circuit apply Professor Countryman's formulation and hold that when a contract has

---

[14] *See* § 84-9-203(b)(3)(A), one means of creating a security interest is the debtor's authenticating a security agreement that describes the collateral. Section 84-9-102(a)(7) (2013 Supp.) in turn defines "authenticate" to mean "to sign." And § 84-9-102(a)(73) defines a "security agreement" as an agreement that creates or provides for a security interest. *See also* § 84-1-201(b)(35) defining a security interest as an interest in personal property which secures payment or performance of an obligation.

[15] Substance prevails over form with the key inquiry under Article 9 being whether there was an intent to create a security interest. *See* Barkley Clark and Barbara Clark, 1 THE LAW OF SECURED TRANSACTIONS UNDER THE UNIFORM COMMERCIAL CODE ¶ 1.03[1] and ¶ 2.02 (3rd ed 2013).

6

Case 13-12494    Doc# 55    Filed 04/23/14    Page 6 of 12

not been fully completed or performed and when future obligations remain, it is "executory."[16] Material performance must remain due on both sides.[17] Some courts and commentators allow that installment land contracts or vehicle sales contracts are indistinguishable from secured transactions because, while the seller retains the duty to convey title upon the buyer's completing the payments, other attributes of ownership like responsibility for taxes, insurance, and maintenance are delegated to the buyer at the beginning.[18] Here, the agreement requires the sellers not only to convey title when the Reasors have completed their payments, but also to insure the trailer. The contract doesn't provide who will pay the property taxes, but since the Priesters still own the trailer, I assume that they continue to pay the taxes as they accrue. The Agreement is likewise silent on who is responsible for repairing and maintaining the trailer, but the sellers' retention of the additional duty to insure the trailer acknowledges that they bore the risk of loss and distinguishes this from a simple installment sales contract.[19]

---

[16] *In re Myers*, 362 F.2d 667, 672-73 (10th Cir. 2004).
[17] *Olah v. Baird (In re Baird),* 567 F.3d 1207, 1211 (10th Cir. 2009) (clarifying *In re Myers* and adopting Countryman test of an executory contract).
[18] *See* 3 COLLIER ON BANKRUPTCY, 16th Ed., ¶ 365.02[2][d]. *See also Johnson v. Smith (In re Johnson)*, 501 F.3d 1163, 1174 (10th Cir. 2007) ("Debtors' sole obligation to tender installment payments and M & M's sole obligation to release the lien when handing over the vehicle title are insufficient to warrant classifying the Sales Contract as executory").
[19] *See In re Knight*, No. CA 11-02891-DD, 2011 WL 3438410 (Bankr. D. S.C. Aug. 5, 2011) (written agreement with seller of mobile home was an executory contract that debtor must assume or reject); *In re Williams,* No. 07-30414, 2007 WL 1875652 (Bankr. W.D. Ky. June 25, 2007) (three rent to own contracts for household goods were executory contracts that must be assumed or rejected)

In the plan, Ms. Reasor treats this agreement as a secured transaction, not as an executory contract. She did not propose to cure her default under the Agreement in her plan, nor does she seek to assume or reject it, focusing me on the consequences of her inaction under § 365.[20] Section 365(d)(2) provides that in a chapter 13 case, the trustee (here the debtor) may assume or reject a personal property contract any time before confirmation or at such shorter time as the court may order.[21] Unlike the provisions of § 365(d)(4) and 365(p)(3) which assess defined consequences to the trustee's failure to assume or reject certain leases, subsection (d)(2) contains no self-executing provision with respect to debtors obligated under contracts concerning personal property who fail to act.

Ms. Reasor's plan merely proposes that she retain the trailer while treating the Priesters' claim as an unsecured claim and offers to allow the claim at $4,000, far less than the Priesters are actually owed.[22] In paragraph 13 of her amended plan relating to executory contracts and unexpired leases, she writes "N/A." The few courts that have addressed what happens to a non-assumed and non-rejected executory contract conclude that the contract "passes through" the case and remains in effect,

---

[20] See § 1322(b)(3) and (b)(7).
[21] § 365(d)(2).
[22] *See* Dkt. 27, ¶ 10(d). Reasor lists the Priesters' claim in the plan section dealing with claims secured by personal property but proposes to treat as an unsecured claim because it was unperfected and pay the lesser of the amount of the debt or the value of the trailer.

8

subject to whatever effect the discharge might have on the debtor's obligations.[23] Such contracts flow through and become obligations of the reorganized debtor.[24] The case law addressing this issue arises in the context of chapter 11 cases and the Court's independent research uncovered no chapter 13 cases on point.[25] This "ride through" doctrine is purely a creature of case law having its origins in a Bankruptcy Act case *Consolidated Gas Elec. Light & Power Co. v. United Rys. & Elec. Co.*[26] But both the Supreme Court and well-regarded bankruptcy treatise authors have recognized and

---

[23] *See In re Texaco, Inc.*, 254 B.R. 536, 557 (Bankr. S.D.N.Y. 2000) (Chapter 11 debtor continuing to derive benefits under the contract or lease remains burdened with the obligations; lease or other contract deemed to 'pass through' or 'ride through' the bankruptcy unaffected by it); *In re Hernandez,* 287 B.R. 795, (Bankr. D. Ariz. 2002) (ride-through doctrine allows debtor to retain the benefits as well as the burdens of the contract; contract is unaffected by the bankruptcy and interests of both parties to the contract are preserved).
[24] *N.L.R.B. v. Bildisco & Bildisco, Inc.*, 465 U.S. 513, 546 n.12 (1984) (Brennan, J., concurring and dissenting) (Non-assumed or non-rejected contracts binding on chapter 11 debtor even after discharge is granted.).
[25] *See e.g., In re JZ, LLC,* 357 B.R. 816, 820-22 (Bankr. D. Idaho 2006), *affirmed* 371 B.R. 412 (9th Cir. BAP 2007) (Fifteen year licensing agreement for manufacture and sale of grinder machines that chapter 11 debtor neither assumed or rejected, nor disclosed as executory contract on its bankruptcy schedules, "rode through" bankruptcy case and interests of both parties to the contract were preserved.); *In re Hernandez,* 287 B.R. 795, 799-800 (Bankr. D. Ariz. 2002) (discussing origins and history of "ride-through" doctrine); *In re Polysat, Inc.,*152 B.R. 886, 890 (Bankr. E.D. Pa. 1993) (executory contract that is neither assumed nor rejected will be unaffected by the bankruptcy filing).
[26] 85 F.2d 799, 805 (4th Cir. 1936) (holding that an executory contract remains in force until it is rejected, and unless rejected, it passes with other property of the debtor to the reorganized debtor). *See also Smith v. Hill,* 317 F. 2d 539, 543 n. 6 (9th Cir. 1963) (accord). *See also In re JZ LLC,* 371 B.R. 412, 423-25 (9th Cir. BAP 2007) (concluding that the ride-through doctrine remained viable after passage of the 1978 Bankruptcy Code).

9

acknowledged the "ride through" doctrine.[27] Another bankruptcy judge in this District has recognized the doctrine in a chapter 11 case.[28] The case law makes clear that the debtor's ability to assume or reject an executory contract under § 365 is permissive in nature.[29] Unless § 365 contains an express statutory exception, the failure to assume or reject does not automatically result in assumption or rejection of contract; instead it "rides through" as though the bankruptcy petition had not been filed. Given what appears to be identical treatment of executory contracts of personal property in chapter 11 and chapter 13, the Court sees no reason to depart from the "ride through" doctrine established by chapter 11 case law and concludes that it applies here.[30] So the Priesters' contract remains in effect and enforceable now and will remain so even after Ms. Reasor's plan is confirmed.

In addition to objecting to the confirmation of Ms. Reasor's plan, the Priesters seek several other affirmative remedies. First, they filed a motion for the court to

---

[27] *N.L.R.B. v. Bildisco & Bildisco, Inc.*, 465 U.S. 513, 546 n.12 (1984) (Brennan, J., concurring and dissenting) (Non-assumed or non-rejected contracts binding on chapter 11 debtor even after discharge is granted and nondebtor party's claim survives bankruptcy.); 3 COLLIER ON BANKRUPTCY ¶ 365.04[3] at 365-33 (15th ed. Rev. 2006) (executory contract continues in existence if debtor in possession fails either to assume or reject in the plan).

[28] *In re Crescent Oil Co., Inc.*, 2010 WL 2721878 at *2, n. 1 and 2 (Bankr. D. Kan. July 8, 2010)(Somers, J.).

[29] *In re JZ, LLC,* 357 B.R. at 820; *In re Hernandez, supra* at 803. *See also,* § 365(a)(. . . "*may* assume or reject any executory contract . . ."); § 1123(b)(2)(". . . a plan *may* . . ."), § 1322(b)(7)(". . . the plan *may* . . .").

[30] Section 365(d)(2) applies to both chapter 11 and chapter 13 cases. *See In re JZ LLC,* 371 B.R. 412, 422-23 (9th Cir. BAP 2007) (discussing similarity of treatment of executory contracts in chapters 9, 11, 12 and 13).

order her to assume or reject the Agreement. Second, and as part of that motion, they also seek relief from the stay to enforce the Agreement. Third, they seek an order requiring her to turn over the trailer to them.

The Priesters' objection to confirmation includes objections to the value Reasor assesses to the trailer and her failure to provide for the contract's payment in full. They further ask that if the Agreement be found to be a secured transaction, Ms. Reasor should be required to repay the trailer's value to them over the life of the plan. Theirs is the only confirmation objection. Having concluded that the Agreement is an un-assumed or rejected executory contract, Ms. Reasor's obligations under it remain in effect and are unaltered by the plan. To the extent her plan payments are insufficient to pay the Priester's debt in full over the plan's life, she will remain indebted to them under the Agreement notwithstanding her discharge, if she receives one. Standing alone, her non-treatment of the Agreement is not a bar to confirming her plan, though it may be an obstacle to her performing it.

The Priesters' request for stay relief to allow them to enforce the agreement should be granted. The Reasors' breach justifies permitting the Priesters to proceed to enforce the contract. Only if the Reasors were to cure their default under the Agreement and pay the remaining balance due on the contract, something the evidence suggests is unlikely, could they force the Priesters to transfer title to the trailer to them. Ms. Reasor's plan did not propose a full cure, nor did it consider the assumption or rejection of the Agreement. Now that her plan has been confirmed, the time for her to do that has passed. In the absence of being offered any assurance of a

11

prompt cure or any other adequate assurance of future performance, and because their ownership interest in the deteriorating trailer lacks adequate protection, there is ample cause to lift the stay to allow them to proceed to enforce the Agreement.

Finally, the Priesters filed a Motion for Turnover or for Adequate Protection.[31] They claim that since the Reasors are in contractual default, they should be granted possession of the trailer or, in the alternative, that they should receive adequate protection. This motion fails for several reasons. First, Mr. Reasor is not a debtor in this case and therefore not within this Court's jurisdiction. The Priesters could only acquire jurisdiction of him here by filing an adversary proceeding. Second, with the granting of stay relief, the Priesters are well-situated to take whatever non-bankruptcy law action they deem appropriate in connection with enforcing the breach of the Agreement. The Motion for Turnover is, therefore, denied as moot.

The Priesters' objections to confirmation are OVERRULED and the plan confirmed. The Trustee or the debtor will submit the appropriate order. The Priesters' motion to assume or reject is DENIED AS MOOT, but their motion for stay relief is GRANTED. Their motion for turnover is DENIED AS MOOT.

### 

---

[31] Dkt. 34.